Good morning, Your Honors. I'd like to reserve two minutes of my time for a vote on a call, and I'll keep an eye on that. Sarah Fabian with the Department of Justice. I'm here today on behalf of the Government of Palos in this case. Your Honors, the District Court erred because the Homeland Security Act and the TBPRA removed unaccompanied alien children, or UACs, from the landscape of immigration detention, and instead created a new statutory framework for the care and custody of UACs. And that new landscape does not allow for the application with paragraph 24A of the Flores Settlement Agreement. It's important to keep in mind that this new framework under the TBPRA does not include any form of immigration detention under the Immigration and Nationality Act. It doesn't include it? It doesn't address immigration detention at all, does it? No, Your Honor. In fact, there is some mention of detention, and I believe the framework of the statute is designed to reference care and custody. So a UAC who is brought into… Does it then make no reference to who makes the detention or non-detention decision? I think… Does it expressly delegate that to HHS, does it? I think it does, Your Honor. Expressly? Expressly. What does it say? It says that the care and custody determinations, the placement and custody… The care and custody doesn't say who makes the detention decision? Well, it says that within 72 hours of any UAC being identified as detentionally incarcerated. It's 8 UAC section 1232. It says that it's okay to have a total statute. But UAC, OAC… UAC is unaccompanied alien child. You're just saying there's only surrender on the purifying conditions? Of course, Your Honor. And that is… I'll note that unaccompanied alien child is a defined term. It was defined… It's just three words. I'd be happy to, Your Honor. And so… But the answer to within 72 hours under the statute, the requirement is that any unaccompanied alien child who is identified should be transferred into the custody of Health and Human Services. With that requirement, it means that no other agency who finds that they have an unaccompanied alien child in their custody is authorized to make any detention or custody determination other than… It needs to start with the proposition that they're taking these outside of the immigration laws. It disperses the fact that the only reason they're here is because of immigration laws. The only reason they're being transferred to HHS and put into whatever they're put into is because of the immigration laws. Right. I think there's an element of that, yes, because… Yes. The definition, yes. That is the beginning. Although the Fourth Circuit did recently find that the continued custody in Health and Human Services is not, in fact, related specifically to the continuation of the immigration proceedings. The reason that it is going to be tied to the immigration enforcement part of things is that that relates to the definition of the unaccompanied alien child. But it is, in fact, once that 72-hour period, once this transfer to Health and Human Services is completed, that it appears from the statute that then the purpose is to take the custody of Health and Human Services and not continue to tie it to any form of immigration detention. The result of this is that it removes, the DB period removes the Department of Homeland Security from the custody determinations, and it removes immigration courts. I'm sorry, I think you're referring to DB. DB, yes, Your Honor. I see. And that removes, it removes DHS and the immigration courts from the custody decisions and the placement decisions for UACs. And it instead places those within the hands of Health and Human Services. This case, then, is not about whether HHS, the procedures that HHS has developed under the CBPRA, do satisfy due process or are constitutional. I would posit that while there hasn't been much discussion of that in this case, those questions are properly raised in other proceedings. There are proceedings for those questions. Proceedings, many lawsuits. Other lawsuits, yes, Your Honor. There are other avenues to challenge whether HHS's procedures are constitutional. Which are currently ongoing. There are, as I understand it, there is a case, I believe, in West Virginia right now, and there is a case, I'm not sure of the status of it, in Northern California. There was the Virginia case. So there are cases that have been brought to challenge these procedures, and there may well be more. But in this case, the question is, was the district court wrong to require bond hearings for unaccompanied L.A. children in HHS custody? Was it wrong to continue to enforce paragraphs 24A of the settlement? Is it impermissible to have these bond hearings? Yes, Your Honor. But why is it impermissible? It is prohibited because HHS, the authority to create procedures for custody placement and review, has been provided in the CBPRA to Health and Human Services. What would prohibit a bond hearing? A bond hearing is a very specific proceeding. It's a redetermination of a custody determination that is made by ICE. In this case, because there is no custody determination made by ICE. Why is it not made by ICE? I'm sorry. Well, that's the regulation. So when a bond hearing is held, the immigration judge is redetermining the initial custody determination. And the authority is to redetermine the initial custody determination. I believe that the language is made by the service, which is. . . That's not in the agreement, though. It's not in the settlement agreement. The settlement agreement doesn't say made by ICE, right? Well, I believe the settlement agreement does say that a child may seek a bond hearing. I don't have the exact language in front of me. But essentially, once they receive their custody determination, what it does is it allows for. . . A child automatically will receive a redetermination after the initial determination is made. And that is in line with what the law was at the time the agreement was written. So they automatically receive this benefit if. . . Your premise is, as I understood, that the bond hearings have no function unless ICE makes a determination. Otherwise, it was a determination made to keep him in custody by the federal government, right? So unless you get ICE in there for some reason, as the only relevant agency, why doesn't it pertain? Well, Your Honor, I would say that I don't think there is currently in the manner that. . . Certainly not in the manner that it was in 1997. And I think not in the manner we think of in an immigration detention. There's not a. . . That's right. He said he was detained by the federal government. And I have a lot of questions about what. . . And I'm sure I will ask your policy counsel about what the. . . What is the detention you're talking about? Because everything relates to people in security facilities and what's this bond hearing about and all kinds of other things. But I see your central point, which is that somehow he isn't in immigration detention in any sense. He was detained by the federal government for immigration reasons and is in detention. And a decision has been made that he's going to be in detention. Now, why is that an immigration detention decision? I think, Your Honor, I would start at the beginning. When an unaccompanied adult child is in custody, it's not a detention decision at that point. The Florida's court said that once the government has a child in their custody, they simply don't have the freedom to let that child go until they can actually explain to the court. I mean, and that has to do with what I said. What are we talking about here? But at some point, people in security facilities, which any regular person would call detention. And let's talk about those people. Okay, and I think that is an important distinction, Your Honor, because I think one of the challenges is that the way paragraph 24A in the district court's order is written is it really does apply to that paragraph to everyone. It doesn't make a distinction between children in secure facilities. But let's start with those people. And so for children in secure facilities, that, again, and I would say that if you look at the KPPRA, the determination that a child should be placed in a secure facility is made because there's a finding of dangerousness to that child's self or others. But the decision for a child, and that is specifically then in the TPPRA, the statute specifically says monthly review of that placement should be conducted by Health and Human Services, therefore very much specifically dictating that authority to Health and Human Services. But I would also say that it's still not, in every case, or in many cases, going to be specifically a detention determination. There's a dangerous determination, but, and I will use the example, if a child is determined to have, for example, a drug issue that is determined, perhaps, that that child would be dangerous to themselves, is released. But if there was an available custodian, if the suitability of the custodian is inextricably tied to this determination, if there were a custodian available who was able to provide the necessary care and services to that child, release might still be possible despite that determination. Whereas if there were not a household available or a custodian available who could provide the necessary care for any sort of concerns that HHS might have, you would. There is, just to clarify fairly heavily on a constitutional avoidance question, my understanding of the constitutional avoidance structure that Swiss was relying on is that if we read TPPRA as, or this whole provision as it turns out, to not have bond hearings, it is no valid determination system with regard to detention. Again, let's step to the people in security facilities. I mean, those people, it seems to me, are pretty much in the position of the individuals back in recall. And there certainly seems to be a major understanding that there needs to be And there is money in the CDPRA, is there? Your Honor, the CDPRA provides that the Health and Human Services should create a monthly review system under prescribed procedures. Right, none of that. I mean, for a child who was actually being held and was essentially a Jew, you think that that would be adequate in recall for a juvenile detention? It's essentially juvenile detention. I think, Your Honor, that there is a question that can and should be addressed on the procedures that need. Well, I understand that, but if it's sufficiently severe, then one solution to that problem is to say that CDPRA wasn't overruling the provision of paragraph 24. I think what I would say is I would question whether bond hearings, to me, the analogy I would make is just bandaging the wrong leg. The bond hearing is not going to, if there are insufficiencies in the HHS processes, we are not, providing a bond hearing is not going to solve the issue. What happens if a bond hearing happens? Let's see, what's the result of a bond hearing? I'm sorry, I don't really understand. What does that mean, Your Honor? Well, an immigration judge has the authority to evaluate flight risk and danger. Flight risk is not part of HHS's determination. Flight risk and danger are two issues in decision. This is what they are. It's a super favorable decision. They are not flight risks. They are not individual things. They are not flight risks or danger. That's all that's decided by the immigration judge. That is all that the immigration judge, and I would… What is part of it? Is that due to the government or to the selection or to anybody else? If HHS is to receive a determination that an individual is in a flight risk or a danger, how is that somehow, why is that an irreversible event as far as HHS is concerned to receive that information from an immigration judge? I would raise the concern, Your Honor, that to receive that, you need to have DHS because DHS attorneys are who are going to argue in these cases. You would have HHS needing to share information about these children with DHS attorneys. Well, isn't it… Judge Reinhardt says, what harm does it do to receive that information? Isn't… At least what happens if the OI has a bond hearing, it's more than informational, right? If the IJ sets a bond or says, you know, or says, you know, makes a order then, the person, you know, can go free, right, and not be detained. Well, isn't that the determination made at the bond hearing? It is for an immigration judge's authority to order the INS. In the classical bond hearing setting, right, that determination is made, right? It is there. I gather your objection as well. You don't like the IJ making that determination because it is now HHS's responsibility and authority to make that decision. Is that your position? Yes, I'm sorry. No, I'm sorry. I think I'm pointing to… What else? Why is it that you can't say, I mean, I do have… Judge, it's a shame to make the judgment, sorry. Well, my question… Why is it so that you are answering my question? You said that what they did is determine whether they were safe keepers or whether they were flaggers. Is that what they do? Or do they order a release? The immigration judge will determine flaggers who are detained and, based on those, will order continued detention or release on a bond. What? Without a bond? Or without a bond, yes, or on other systems of monitoring. What I'll say is my concern, Your Honor, and I guess the initial concern, to answer your first question, is that whether the immigration judge has no authority to order HHS to release the source of that understanding. I'm looking at the 2016 BIA decision. So, is that what you're basing your conclusion on? I think that there's that analysis, which, as I understand it, is based on a regulation which says, custody of five determinations made by the service pursuant to a CFR may be reviewed by an immigration judge. And they concluded that the service meets INS, held INS, which was transferred to DHS and, therefore, does include HHS. This is a very technical, jurisdictional argument. Is that what it is? Yes. And it's based on a regulation? It is. And I'll say I do accept that goes to the authority of the immigration judge to hear the bond, hear the case in the first place. But there's also the question that once the immigration judge has made a determination, what authority do they have to order HHS? When HHS is specifically required to follow the procedures of the TVPRA, if the immigration judge has a role to play and that has something to say in that, you'd think that Congress would have put that into the TVPRA,  that there may be other procedures that would be helpful. Well, that's one possibility. Another possibility is if you knew about the settlement agreement, you knew that it said that the judge wouldn't have bond hearings, and if they were trying to overrule it, they would have said that. So you have the classic problem of what is essentially a rebellion implication, although an argument, although in a peculiar context, because it's a settlement agreement, not a statute. I agree with that, Your Honor. But I think the more reasonable reading has to be that if they set up an entire scheme in the TVPRA. But there's a huge gap in the scheme, and the gap in the scheme is that it has to be many, many years after a determination that you can't obtain to the vials of what are essentially restrictive facilities without a full process that isn't any. I think what I would say is that if there's a gap in the scheme, it's that. Well, I understand. The question is whether the existence of that gap tips our understanding of these two possibilities of what Congress was doing in achieving PRA, that is, whether they were assuming the continuing existence of the settlement agreement, and if it's in paragraph 24, assuming that they were getting rid of it. I would say I don't believe there's a gap so much as I think that it's section 1232C2A does say that healthy human services should create procedures. If there's a gap, it's that that language may not have gone far enough or that healthy human services may need to create better procedures. And that is a question that is a source of challenges that exist and may exist again in the future. All right. Well, we don't have time for questions, so I'm going to turn it back over to you two. Thank you. Good morning. Carl Speaks of the plaintiffs. I raised that before, for instance. My name is William Miller. What is the U.S. IJ hearing determination? What is the U.S. IJ hearing determination in order to be consistent with paragraph 24A of the agreement? The same things that they've always done, Your Honor, which is determine dangerousness and flight risk. The people of every child that it becomes. Before you get to those folks, does that mean that they must afford the release of some of these people who are filed out to be flight invoices? Not to be dangerous? No, Your Honor. The settlement, in question, is in the sense of a hierarchy of potential custodians or approved custodians. Once it's determined that the minor is eligible to be released, then it's incumbent upon the government to be proactive in seeking to find appropriate custodians. Is that an effort to find appropriate custodians for the PHHS? Yes, Your Honor. Is your view of the survival of 24A, the IJ, dissatisfy around if you simply make determinations as to flight risk and safety, and determine that information in order to maintain agency in the government? Yes, it essentially eliminates those grounds for continued detention. And, by the way, this has been something that has existed ever since the INS work, since the settlement was signed. Unlike an adult, a minor needs someone to go to if everyone concedes that. The INS, under the settlement was signed, had custodians just as HHS is supposed to do now. And the immigration judges were deciding whether dangerousness and flight risk were sufficient grounds, and they know themselves to retain the minor in detention. So, let me follow up on the judge's question, though. So, I think you agreed with me on one. So, the IJ makes a determination of dangerousness, not dangerousness, just what conditions are necessary to police this minor. And then, I think in answer to his question, you say yes, it would be fine to have, then, HHS take the ball from there, right? I think I see a turnout. Maybe the argument is, though, what if HHS disagrees with the conditions set by the IJ? Can the HHS ignore this? No. Who are the custodians? It's our job to decide what's in the best interest of the minor. Well, at that point, the Old Amendment custody, because they're potentially dangerous, My question is, at this stage, at this point, can the HHS disregard the IJ's determination and make their own determination? No, Your Honor. So, how do they justify the IJ's determination? In support, yes. Of course, they can do that. There's no other change. They've got to go back to immigration court. It's a repeal of the Board of Immigration Appeals. Let's follow up. The essential scheme, as I understand it, and I think this is what you were saying, was to say under the agreement, there's a set of rules about, I mean, the only difference, the main difference is who's doing who. Correct. And that's really what the government's been concentrating on, the scheme that has been transferred to HHS. But in terms of the whole point of the settlement agreement was essentially to create a system that was in the best interest to make these determinations, taking the child's interests into account and setting up standards for doing that. Yes. So, then we get to the question of this. So, the problem of what the immigration judge could, what his authority was, was limited in the same way at that point. It was not, he wasn't going to decide, if the child was dangerous, whether he went to a licensed facility or this or that custodian. No, Your Honor. So, that gets back to my question. Who's going to these bond hearings? The bond hearings are going to be every class member. Now, the settlement does not distinguish. Sorry, I don't understand. Well, the settlement does distinguish between the type of facility you're being held and what it provides to the majority of people. Well, but it seemed to me it'd be implicit in the notion of a bond hearing, which is a reference to an existing procedure. You were talking about people in secure detention facilities. No, Your Honor. The truth of the matter is, whether you're held in a juvenile hall like Yolo or whether you're held in one of the other facilities that OR operates, you are not free to walk away. You are in custody. Your Honor, that's not every class member. Excuse me. The class members are not people who are in custody of individuals or in coat pumps or something. More than that. It's defined as every minor who is in the custody of the Immigration Service or its successors in interest, which nowadays is four. So, the people who are released to individuals are not in the class? Once they're released, no, they're no longer a member of the class. People who are released to group homes are not in your class? They're not. Or foster homes? If they're released to a foster home, then they're no longer a member of the class. But if they're released or placed, rather, in an OR-funded foster home, then they still remain in detention. And they've been to some of these facilities. So, the class is people who are in detention. Yes. Whether they're regarded as a juvenile hall equivalent somehow. That's correct. That's detention. Yes. That's right. And these people, before the DVPRA, could go to the bond hearings. Yes. Bond hearings. And then the IJ could decide that some of these people haven't been determined to be dangerous, right? It is true that some of them have not been determined to be dangerous. What determination of whether they're dangerous? Well, the record shows, and Dan talked about it in the record, most of the time we don't know why OR is refusing to release these minors. They're simply left to twist in the wind for months at a time, and in some cases over a year, not knowing why, what the government's basis or what its evidence is for continuing to detain them. At a bare minimum, a bond determination, a bond hearing, which is supposed to take place as soon as possible, would require the government to articulate in some clear way, some definable way, why it is that it continues to detain a particular class member under the present system. Is there any way for a juvenile to pass or make a motion for a bond hearing? It must be under present practice. No. And that is the threat. That a minor in OR or custody in the Office of Refugee Resettlement, which is the same as Health and Human Services, that a minor in their custody has no right to a bond hearing, and so they may request one, but they're not going to get it. And the VA recently said that's by chance. I'm not saying under the paragraph 24A, if a minor may request a bond hearing. Yes, that's true, but Health and Human Services is taking a position. As soon as 24A were wiped out, the minority would have no right to have a chance for a bond hearing or have a loan to a person. That's correct, Your Honor. And even if 24A may request it, if you have a loan, then that's about the same as one part of the government. Just like with the third-part threat, we can appeal the IJA's opinion to the BIA and then to the Attorney General. That's correct, Your Honor. And has the IJA just instituted some alternative review procedure in considering determination? It has a procedure that is published on the Internet. It did that in 2015. And the process is one that doesn't begin to compare to what a bond hearing is in the immigration context. And, by the way, it doesn't compare. You mean it doesn't have the same intended rights? There's no right. The child him or herself has no rights to request a hearing. That has to be done by a custodian. The only custodians that are permitted to request a hearing are parents or guardians. The hearing itself is by telephone or videoconference. It happens at the parent end, a very long process, which can take months and months. First of all, ORR has to decide, no, we're not going to release. It has to be reviewed by the director of ORR. And at the end of all that, the parent or guardian is permitted to write a letter to HHS saying, please have a hearing on this. No other type of post-custody is entitled to hearing. And the child him or herself is not entitled to the hearing. So we've explained in our briefing how woefully adequate the hearing is conducted by an administration of children and families administrator. This was something that was instituted after the district court or just prior to the district court's ruling in this case. I don't know that the court was ever aware of it. As I said, it's an internet procedure that the staff report, which decided not to release the child is being created on the fly because of the existing regulation and can be changed without any notice to the public at all. By the way, the other point about this is that that procedure bears no resemblance to what a juvenile court would do, what a child welfare agency would do, in any of the 50 states. In fact, if you look at the procedures of the juvenile courts, that is, the courts follow all the 50 states. In some ways, it's a mismatch here because the bond hearing doesn't either. Starting with the fact that it's a bond hearing, that these children don't have bonds, right? And that the DEIJ has no authority, ultimately, as I understand it, to order the child released, right? As has been the case since the settlement was signed. As has been the case since the settlement was signed. This was the case when the settlement was signed. I understand that. But, I mean, that leads to the conclusion of whether these bonds is really a solution to their problem or whether instead, as the doctor suggested, we should be looking directly at the due process problems of these children rather than trying to bring them to this particular procedure that happens to be in existence. I can see that. I can imagine. I can see that. So, I don't imagine that the kids who are in the juvenile court did not defer to having the American Determined to be Dangerous. Anyway, they're in these ORR facilities because they were defined by Justice DePuto, right? I mean, there were a certain number of those kids. Yes. And so, sending them to their bond hearing, what is that going to do? Well, it's the… Nobody ever said they were dangerous. They just don't know where to put them. Well, that may be the case in some cases. In other cases, it's not. But what we've been asked, what the government asked us here, is to draw up Paragraph 24A for everybody. Now, I think you can see that this is not a perfect solution. And what we have proposed to the government is getting it moved. We think it's still correct. It's that there needs to be within HHS itself a procedure which provides that review process for whenever a minor is detained and refused release. That's probably a better way of putting it. But we have what we have. You would like a better solution? Yes. All right. For 24A, once you negotiate, once you get a contract, would you get a better deal for me, would be happy? Yes. Okay. Once you negotiate that deal, do you need to get something better for me? That's correct, Your Honor. And the question is whether it is permissible. Would that deal to exist in a law way that provides a solution, whether it's here in the state of Omaha, in the state of New York, in Seattle, or California? That is correct, Your Honor. And one thing that has yet to be mentioned is that Congress did, in the HHS, the Omaha Security Act, as well as the DVPRA, both acts were designed to help children, to make things better for them. Is there some ways to replicate the professions of these individuals? In some cases, it does replicate them. In some cases, it doesn't. But in the state use clauses, which are included in both acts, Congress said these agreements, these pre-existing agreements, are going to remain in effect. They're going to remain in effect. And it's for it. Just back in last year, according to Judge Roberts, it's not just the DVPRA. The DVPRA amounts to a reshuffling of the bureaucracy. And why shouldn't the government continue to apply the provisions of the settlement simply because, oh, even beyond that, the bureaucratic shares have been shifted? And when you look at the record, when you look at the facts of these cases, what children have been through, this is not a benign, completely benign, unerringly benign, child welfare agency. Children are being hurt. And if the government doesn't feel that 24A is something that it wants to abide by anymore or is adequate in making go and they should move, is there an obligation to move the district court to modify the agreement, not to throw the baby out of the bathwater, but to provide a substitute procedure that would be more in line with the current situation if, in fact, the current situation is passed? Thank you. Thank you, Your Honor. I just want to say my counsel mentioned that a bond share would eliminate the basis for continued detention by HHS. The problem with that is that there are just so many questions that are raised when you talk about how you would take a bond sharing determination and implement it as part of the TVPRA structure and the HHS determinations. It also might have exactly the opposite effect. As we were saying before, your whole argument is pivoted on the fact that the DHS essentially is the successor to the INS, not the HHS, right? I would say that's part of it, but I would also say that the intent of Congress in the TVPRA was to take this detention or the custody and have it be custody before HHS and not then keep DHS out of the process. And that's the concern that it raises when you're talking, when I say DHS attorneys are going to appear in immigration court and need to get that information from HHS, information that HHS currently would not share with DHS. So you're talking about including DHS. Well, when you're the agency, what's so hard for one of the agencies to go to the other agency and say, Dr. Norma, you were here, you always did. Your honor. I accept the challenge to the government. I accept that that's not something that the court should be concerned about. The case of the children, the bigger thing is whether that's really what is best for the children. I'm talking about information that HHS would not share with DHS, who is also conducting these children's immigration proceedings. Instead, they are now having to share information about assessments that they might be conducting with these children. So my concern is the government doesn't like to share information. It's a matter of general principle. But in this particular case, what's so terrible about sharing information of one agency with another agency, the kind of information that's always been used under disagreement? And how easily is it we can't use this information? Because if not, there are more agencies that's here to follow. I get that, your honor. What I would say is I question whether that's really in the best interest of the child to have DHS back in the process. One of the realities here is that the new statute, the Homeless Trade Act, is general. That is, everything used to be in DOJ. And it took the bulk of the immigration regulation and administration out of DOJ and put it in DHS. So you have this conflicting problem anyway with the immigration courts governing an agency other than itself. Right? So where would we get the idea if Congress was happy to do that, that it wasn't to govern DHS at all? I think from 2002 to 2008, that confusion was evident in the conflicting decisions of the BIA as to whether the immigration courts could continue to review custody. I think the evidence is in 2008 when the TVPRA was enacted and very much created a new framework. And wouldn't you think if they were going to do that, they would have specifically said, and the IJs don't have anything to do with this anymore, can't tell DHS what to do. But they didn't. I think it's evident in the fact that they did say when a child is placed in secure placement that DHS, the secretary of DHS, shall prompt a review procedure. That's the way it works for DHS too, right? They do it too. But in the end, you get to put on IJ. That's right. But DHS does that as part of the existing authority was for that to occur. And the Congress presumably knew that. And instead of referencing the immigration laws, the INA, in fact, the TVPRA is not. It wasn't enacted as part of the INA, even though it's sort of located in the right numbers there. But they made a new statute and they created a new framework and new procedures under a different agency. But that's what I'm saying is the whole statute did that. Because the first one, because it created DHS, all this seems to me was creating a parallel in HHS of what otherwise goes on in DHS. But why is one of them therefore subject to the IJ bond guarantee? Because the immigration bond guarantees are part of the immigration laws and the custody, the DHS appears in immigration court with regard to immigration proceedings and the custody because they hold those individuals in their custody. HHS holds these other individuals in their custody. And HHS has been charged with developing procedures to provide for a civil court, okay? I'm going to take my time to thank you all for being part of this. I really appreciate it. Thank you. I appreciate you all for being here today. I hope you have a good experience. I hope you take any other cases and other updates. Thank you.
judges: Reinhardt, Tashima, Berzon